<u>NOT FOR PUBLICATION</u>                                      [Dkt. Ent. 5]

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

| | |
|---|---|
| CHRISTIANE M. TUONI, <br><br> Plaintiff, <br><br> v. <br><br> ELECTRONIC EVIDENCE DISCOVERY INCORPORATED, n/k/a DATICON EED, <br><br> Defendant. | Civil No. 10-2235 (RMB/JS) <br><br> **OPINION** |

**BUMB**, UNITED STATES DISTRICT JUDGE:

This matter comes before the Court on a motion by defendant Electronic Evidence Discovery Incorporated ("Defendant" or "EED") to transfer this case to the United States District Court for the Western District of Washington. Plaintiff Christiane M. Tuoni ("Plaintiff") initiated this action with the filing of a Complaint on May 4, 2010, which alleged, among other things, gender and age discrimination in employment. For the following reasons, Defendant's motion will be granted.

**I. Background**

Plaintiff's allegations, as set forth in the Complaint, are as follows. Defendant is a litigation support vendor providing software and services to the legal industry, with offices in

1

Kirkland, Washington, New York, New York, and Washington, D.C. (Compl. ¶¶ 9, 10.)  Plaintiff accepted an offer of employment with Defendant on February 11, 2005, for the position of Regional Director.  (Id. at ¶ 13.)  Her job responsibilities included "sales on behalf of EED 'throughout the northeastern United States with the territory to be determined' . . . ."  (Id. at ¶ 13-14.)  Plaintiff primarily worked from her home in Wilmington, Delaware, but was secondarily assigned to Defendant's Washington, D.C. office.  (Id. at ¶ 20.)  Her territory varied throughout her employment, but generally stretched from Massachusetts to South Carolina.  (Id. at ¶ 21.)

Plaintiff alleges that discriminatory conduct by Defendant and its employees between July and October 2008, ultimately forced her to resign.  Specifically, she states that Defendant hired a younger, male salesperson who was assigned to Plaintiff's region and given several of her accounts.  (Id. at ¶ 25.)  Defendant required Plaintiff to train him, even though this was not one of her assigned duties.  (Id.)  In August, Defendant "unilaterally and without documentation or explanation" reduced Plaintiff's commission rates from 10% to 5% on some projects and 2.5% on other projects.  (Id. at ¶ 26.)  Plaintiff further alleges that her superiors, vice president of East Coast Sales Jose Lebron, who was located in Washington, D.C., and Washington-based CEO David McCann, specifically excluded her from several

meetings with customers that were in her assigned territory and, in some cases, her assigned accounts. (Id. at ¶¶ 27-31.) According to Plaintiff, in early October 2008, both Lebron and McCann requested contact information from Plaintiff's assigned accounts so that they could exclude Plaintiff and re-assign the accounts to younger, male salespeople. (Id. ¶ 32).

On October 20, 2008, Plaintiff filed a complaint with Defendant's Human Resources Department concerning alleged employment discrimination practices by Plaintiff's superiors and Defendant's unilateral change of her commission plan. (Id. at ¶ 33.) Plaintiff maintains that EED's Human Resources ("HR") Department did not make any attempts to investigate her complaint. (Id.) She notified HR that she wanted to resign, but the HR employee would not accept her resignation and instead tried to have several new EED employees convince her not to leave. (Id. at ¶ 36.) Plaintiff asserts that EED "constructively terminated" her on October 31, 2008. (Id. at ¶ 37.)

Plaintiff filed this action on May 4, 2010, alleging violations of Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, the Delaware Employment Practices Act, and breach of contract.

Defendants now argue that this case should be transferred to the Western District of Washington, because (1) venue in the

District of New Jersey is improper under Title VII's venue provision, (2) the convenience of the parties and witnesses and the interests of justice require transfer under 28 U.S.C. § 1404(a), and (3) the parties are bound by a forum selection clause in Plaintiff's employment agreement (the "Agreement") that mandates that this case be heard in the courts of Seattle, Washington.  Defendants point to the following forum selection language in the Agreement:

> **Choice of Law/Enforceability**: This agreement is to be governed by and construed in accordance with the laws of the State of Washington without regard to its choice of law rules.  <u>Any action arising in connection with this agreement must be brought in state or federal court in Seattle, Washington</u>, which shall have exclusive venue and jurisdiction over the subject matter of and parties to this agreement, <u>subject to the arbitration clause</u>, below.  The parties hereby consent to jurisdiction in the State of Washington . . . .

(Sgambati Cert., Def.'s Ex. A at ¶ 11 ("Agreement").)  The arbitration clause, which is referenced in the forum selection provision, states the following:

> "The claims covered by this agreement to arbitrate include but are not limited to, claims for wages or other compensation due; claims for breach of any contract or covenant, express or implied; tort claims; <u>common law and statutory claims for discrimination</u>; and claims for violation of any federal, state or other governmental constitution, statute, or law.

(Id. at ¶ 14.)  This language demonstrates, Defendant argues, that Plaintiff waived objections to the Washington venue.  Defendant further argues that the convenience-of-the-parties analysis under § 1404(a) warrants transfer.

4

## II. Discussion

As a preliminary matter, it bears noting that Plaintiff does not contest the validity of the forum selection clause or the fact that the clause is mandatory.  Rather, Plaintiff only disputes its scope, arguing that the clause does not apply to the instant suit for employment discrimination.  The Court notes that a forum selection clause should be considered within the context of the multi-factor balancing test that courts employ in deciding motions to transfer under 28 U.S.C. § 1404(a).  See Jumara v. State Farm Ins. Co., 55 F.3d 873, 875 (3d Cir. 1995).  In the Third Circuit, such contractual agreements carry substantial, but not dispositive weight.  See id. at 880.  Thus, the Court will consider the parties' forum selection clause as part of its § 1404(a) analysis.

Section 1404(a) of Title 28 of the United States Code provides that an action may be transferred "for the convenience of the parties and witnesses, in the interest of justice [to] . . . any other district . . . where it might have been brought." The decision to transfer under § 1404(a) is entirely within the discretion of the district court and involves an individualized, fact-intensive consideration of all the relevant factors.  See Stewart Or., Inc. v. Ricoh Corp., 487 U.S. 22, 23 (1988).  "A determination that transfer to another jurisdiction is appropriate represents an 'exercise[ ] of structured discretion

5

by trial judges appraising the practical inconveniences posed to the litigants and the court should a particular action be litigated in one forum rather than another.'" Lawrence v. Xerox Corp., 56 F. Supp. 2d 442, 450 (D.N.J. 1999) (internal citations omitted).  The district court "is vested with a large discretion" to determine when transfer should be ordered "for the convenience of parties and witnesses, in the interest of justice." Solomon v. Continental Amer. Life Ins., 472 F.2d 1043, 1045 (3d Cir. 1973) (internal quotations and citations omitted).

In deciding a transfer motion, the Court must first determine whether the proposed alternate venue is one in which the case "might have been brought."  28 U.S.C. § 1404(a).  The parties do not dispute that this action could have been filed in the Western District of Washington.

Next, the Court must consider whether the forum selection clause should yield to the public and private factors relevant to a section 1404(a) transfer inquiry.  The private interests include: (1) the plaintiff's forum preference; (2) the defendant's preference; (3) where the claim arose; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses to the extent they may be unavailable for trial in one of the fora; and (6) the location of books and records. Danka Funding, LLC v. Page, Scranton, Sprouse, Tucker & Ford, P.C., 21

F. Supp. 2d 465, 474 (3d Cir. 1995). The public interests include: (1) the enforceability of the judgment; (2) practical considerations in making the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases. Id.

**A.  Private Interests**

Here, the private interests weigh in favor of transferring the case to the Western District of Washington.

**1. Convenience of the Parties**

Washington presents a more convenient location for the parties than New Jersey. During the entire course of Plaintiff's employment with Defendant, she worked for a Washington-based company and lived and worked in Delaware.[1] Although New Jersey is Plaintiff's preferred forum, this preference requires less deference, since it is not her home forum. See, e.g., Lony v. E.I. Du Pont de Nemours & Co., 886 F.2d 628, 633 (3d Cir. 1989). Defendant's headquarters and principal place of business are in Washington. It does not have any offices in New Jersey.

---

[1] Significantly, Plaintiff has not sought transfer to another forum, such as Delaware. Thus, the Court considers merely whether Washington presents a more convenient forum for this case than New Jersey.

Further, the Court notes that where the parties have contractually agreed to litigate such disputes in Washington, the Court must afford this fact substantial weight in considering the convenience of the parties.  The Court thus turns to the applicability of the forum selection clause.

### *a. Forum Selection Clause*

Plaintiff does not argue that the forum selection clause is unenforceable.  Instead, she argues that it is so narrowly drafted that it does not apply to the instant claims for employment discrimination.  (Pl.'s Opp. Br. at 18.)  Specifically, Plaintiff points to the heading of the Agreement, "Employee Agreement Regarding Non-Competition, Non-Disclosure of Confidential Information, and At-Will Employment Status," as evidence of her contention.  (Id. at 17.)

The Third Circuit has held that "pleading alternate non-contractual theories is not alone enough to avoid a forum selection clause if the claims asserted arise out of the contractual relation and implicate the contract's terms." Crescent Inter., Inc. v. Avatar Communities, Inc., 857 F.2d 943, 944-45 (3d Cir. 1988) (internal citations omitted).  Courts are wary of adopting a narrow interpretation of a contract where it would allow a party to avoid "a forum selection clause by simply pleading non-contractual claims in cases involving the terms of a contract containing the parties' choice of forum."  See id.

Here, Plaintiff's narrow reading of the contract does not square with the express language of the Agreement. The forum selection clause designates Seattle, Washington, as the appropriate forum for "<u>any action</u> arising in connection with this agreement." (Agreement at ¶ 11 (emphasis added).) The forum selection clause also states that it is "subject to the arbitration clause," which is located three paragraphs later in the Agreement and expressly provides that it applies to "<u>common law and statutory claims for discrimination</u>." (Agreement at ¶¶ 11, 14 (emphasis added).) Thus, because the forum selection provision applies to "any action" arising out of the Agreement, and because the Agreement clearly contemplates employment discrimination claims, it follows that the forum selection provision would apply to the employment discrimination claim at issue here.

Plaintiff raises a second argument that the Agreement does not bind the parties because Defendant violated the arbitration agreement when it brought an action in state court against Plaintiff for a temporary restraining order and injunction for violation of the non-compete agreement. (Pl.'s Opp. Br. 18-19.) Defendant responds, correctly, that the Agreement expressly states that Defendant is "entitled to temporary and permanent injunctive relief and/or temporary restraining orders in case of [violation of the Agreement] . . . ." (Agreement at ¶ 10.)

9

Thus, Plaintiff's argument that Defendant's suit for injunctive relief was not contemplated or permitted by the Agreement rings hollow given such express language to the contrary.

Accordingly, the forum selection provision weighs in favor of transferring the case to the Western District of Washington. Nevertheless, this fact receives only "substantial consideration" as opposed to "dispositive weight" in the Court's § 1404(a) analysis. Jumara, 55 F.3d at 880.

The Court also considers the convenience of the parties as indicated by their relative physical and financial condition. Plaintiff complains that the costs of litigating the case in Washington would impose an "undue burden" on her, whereas Defendant is a "multi-million (perhaps multi-billion) dollar business," which "has the financial resources to respond to this case in this jurisdiction." (Pl.'s Opp. Br. at 14-15.)  The Court understands that Plaintiff will incur more costs as a result of litigating her suit in Washington, but Plaintiff has not submitted any evidence that she will be effectively deprived of her day in court if jurisdiction is transferred.  "Mere inconvenience or additional expense is not the test for unreasonableness" that could invalidate a forum selection clause, "since it may be assumed that the plaintiff received under the contract consideration for these things." Danka Funding, 21 F. Supp. 2d at 472 (citing Centr. Contracting Co. v. Maryland

10

Casualty Co., 367 F.2d 341, 344 (3d Cir. 1966)).

Plaintiff also argues that her friend and attorney in this matter is located in New Jersey, which should weigh against transfer. However, Plaintiff has cited no case law to support the contention that her choice of a New Jersey-based attorney should have any impact on the Court's decision to transfer. In fact, if this were the case, plaintiffs could easily circumvent § 1404(a) by merely securing counsel in the desired forum. Regardless, the issue has become moot, because Plaintiff's attorney has relocated to Chicago, Illinois, during the pendency of this motion. [Dkt. Ent. 10.]

### 2. Convenience of the Witnesses

This factor also weighs in favor of transfer, in light of the fact that the decisions giving rise to Plaintiff's claims for employment discrimination were presumably made by Defendant's CEO and Human Resources Department in Washington. (Compl. at ¶¶ 33, 50.) Defendant has indicated that Plaintiff's support staff, who may be called as witnesses, are also located in Washington. (Def.'s Reply Br. at 9-10.) Although the Complaint identifies a handful of superiors located in Maryland, Washington, D.C. and Connecticut (Compl. at ¶ 50; Def.'s Reply Br. at 9-10), Plaintiff has not identified a single witness who is located in New Jersey.

### 3. Where the Claim Arose

The Complaint alleges that the discriminatory conduct by

Defendant's management effectively forced Plaintiff to resign. (Compl. at ¶ 50, 57.)  Specifically, Plaintiff cites to conduct by Defendant's Washington-based CEO and Human Resources Department, her supervisor, Jose Lebron, who was based in Washington, D.C., and another supervisor, Gary Carignan, who was based in Connecticut. (See id.; Pl.'s Opp. Br. at 11-12.)  Thus, it appears that a substantial part of the events giving rise to this action occurred in Washington, and, secondarily, in Washington, D.C., and Connecticut.  Again, the Court notes that none of the alleged conduct occurred in New Jersey.

Plaintiff attempts to establish a connection to New Jersey by stressing that a fraction of her clients were located here.[2]  The Court is unconvinced, since the actual employment-related decisions, such as whether to reassign Plaintiff's territory and clients to other salespeople, were likely made in Washington, not New Jersey.

**4. The Location of Plaintiff's Records**

The records pertaining to Plaintiff's employment are maintained in Washington.  (Def.'s Moving Br. at 13.)  Plaintiff responds that these records are either already in her possession in Delaware or "can very easily be transmitted to one of

---

[2] The parties dispute the number of New Jersey-based clients Plaintiff had.  Plaintiff alleges that 7 of her 44 clients were located in New Jersey, (List of Clients with EED, Pl.'s Ex. A.), while Defendant contends that only 4 of her 200+ accounts were located in New Jersey, (Def.'s Reply Br. at 9).

[Defendant's] East Coast offices." (Pl.'s Opp. Br. at 10.) Again, Plaintiff appears to put forth an argument for venue in another East Coast district, but fails to establish a connection to New Jersey. Thus, the private interests weigh in favor of transfer.

**B. Public Interests**

The public interests also weigh in favor of transferring this case to the Western District of Washington. It is clear to this Court that litigation of this case will likely be less expensive and more efficient in Washington, where, as stated above, it appears that many of the witnesses, books and records are located.

Further, the Court agrees with Defendant that the venue provision for Title VII claims also weighs in favor of transfer. "Title VII claims may be brought in any of the following places: (1) where the unlawful act is alleged to have been committed; (2) where plaintiff would have worked but for the unlawful act; (3) where employment records related to the proscribed conduct are maintained; and (4) where the employer has its principal office (but only if the defendant cannot be brought before the court in any of the three preceding districts)." E.E.O.C. v. Charles Schaefer Sons, Inc., 703 F. Supp. 1138, 1146 (D.N.J. 1988) (citing 42 U.S.C. § 2000e-5(f)(3)).

Washington is the state in which Plaintiff's employment

13

records are kept, where Defendant's management and Human Resources Department are located, and where employment decisions giving rise to this action were made.  (See Def.'s Moving Br. at 8.)  New Jersey, on the other hand, has simply no connection to these claims other than the fact that Plaintiff allegedly lost between 4 and 7 New Jersey-based clients due to Defendant's conduct, by all accounts a mere fraction of her total clientele.  See, supra, at n.2.  Plaintiff readily admits that she lived and worked in Delaware during the relevant time.  Thus, the Title VII venue provision also weighs in favor of transferring the case to the Western District of Washington.

Further, because the alleged wrongful conduct occurred outside of New Jersey, there is no local interest in having the matter decided here.  The burden of jury duty should therefore not be imposed on New Jersey jurors.  See, e.g., Ferens v. John Deere Co., 494 U.S. 516, 529-30 (1990) ("Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation.") (internal citation omitted).

Plaintiff also does not dispute that the relative docket loads for the District of New Jersey and the Western District of Washington favor transfer.  The District Courts of Washington have 21 judges and 7 magistrates for approximately 2,700 pending civil actions, whereas the District of New Jersey has 22 judges and 12 magistrates for approximately 5,707 pending civil actions.

(Sgambati Cert. at ¶ 4 [Dkt. Ent. 5-2].)

Although Plaintiff has asserted one claim under Delaware law, the Agreement indicates that Washington law would govern this action.  Because Washington courts are more familiar with Washington law, this public interest factor also mitigates in favor of the requested transfer.  See, e.g., Pappalardo v. Advent Prod. Dev., No. 06-4697, 2007 U.S. Dist. LEXIS 31572, at *18 (D.N.J. Apr. 30, 2007).

Thus, the public interest factors also support transferring this action.

### III. Conclusion

On balance, the forum selection clause, the Title VII venue provision, and the private and public factors ultimately weigh in favor of transferring this matter to the United States District Court for the Western District of Washington.  Accordingly, Defendant's motion to transfer pursuant to 28 U.S.C. § 1404(a) is **GRANTED**.  An accompanying Order will issue this date.


Dated: December 23, 2010         s/Renée Marie Bumb
                                 RENÉE MARIE BUMB
                                 United States District Judge